**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN THE MATTER OF: | CASE NO: 09-01452 SEK |
| **ARTEMIO PEREZ NEGRON** | |
| ***Debtor*** | |
| | ADV. NO. 09-00194 SEK |
| ARTEMIO PEREZ NEGRON<br>Plaintiff | VIOLATION OF<br>AUTOMATIC STAY |
| v. | |
| BANCO POPULAR DE PR<br>Defendant | |

## JOINT PRETRIAL REPORT

**TO THE HONORABLE COURT:**

**COME NOW**, ARTEMIO PEREZ NEGRON and BANCO POPULAR DE

PUERTO RICO, (" **BPPR**"), through their undersigned counsel and in compliance with

this Honorable Court's Order, respectfully submit the pre-trial report in this case:

### I. NATURE OF THE CASE:

#### A. Debtors:

This is an action for damages arising from the violation of the automatic stay by

defendant creditor pursuant to 11 USC §362(a)(3)&(6); §362(k) and Rule 7001(1)FRBP.

Jurisdiction is invoked under 28 USC §157(a)(b)(1), 28 USC §§157(b)(2)(K) and §1334.

#### B. BPPR:

On September 4, 2009 debtors filed a complaint against BPPR for willful violation of

the automatic stay. BPPR automatically sent a payment book and made a debit of

$397.00 on debtor's savings account with BPPR for the payment of a Popular Finance's

personal loan a few days after the filing of the bankruptcy petition, but before notice of

the bankruptcy proceeding was served by the Clerk of the court to BPPR. On December

10, 2009 BPPR filed a Motion requesting entry or order for partial judgment declaring that BPPR incurred in a violation of the automatic stay by operation of 11 USC §362. On January 21, 2010 a Status Conference was held were the Court granted Partial Judgment as to the Violation of the Automatic Stay. Therefore, discovery proceedings are limited to determine if BPPR actions were willful as required by 11 USC §362(h) and if debtor suffered any damages. As will be demonstrated throughout this report, BPPR will maintain that their actions were not intentional or deliberate, as required by the Bankruptcy Code under the "willful" standard for the imposition of actual damages. Also, BPPR's actions were not malicious, egregious or in bad faith, as required by the Bankruptcy code for the imposition of punitive damages.

## II. THEORY OF THE PARTIES

### A. Debtors:

Pérez filed a voluntary petition under Ch. 13 of the Bankruptcy Code before this Court on February 27, 2009.

BPPR was listed by Pérez in Schedule F as a creditor holding two unsecured claims against the estate; one in the amount of $1,353.39 under account number ending in 8223, and the other for $4,335.35.

That BPPR received timely and adequate notice of the bankruptcy filing by Pérez becomes apparent from the fact that on March 11, 2009, less than two weeks after the bankruptcy filing by Pérez, BPPR filed two proofs of claim corresponding to the two unsecured claims listed by Pérez for BPPR in Schedule F. These claims appear docketed as claims #1 and #2 respectively.

At the time of the bankruptcy filing, Pérez had a checking and/or savings account with BPPR where the proceeds of his social security pension were deposited directly by the Social Security Administration on a monthly basis.

Schedule I reflects that the only source of income for Pérez and his spouse at the time of the bankruptcy filing came from social security benefits in the amount of $752.00 and $400.00 respectively.

BPPR customarily made automatic deductions for payment of the two claims listed by Pérez in Schedule F, whenever payment on these claims were in default.

On February 27, 2009, Pérez visited the Río Piedras Branch of BPPR next to the Farmer's Market ("Plaza del Mercado"), to apprise BPPR of the fact that he had filed for bankruptcy, and to request the termination of these automatic deductions by BPPR from his checking and/or savings account due to the bankruptcy filing. At the time he spoke with an employee by the name of Lisandra Rodríguez, who informed him that she could do nothing about his request.

The next day, on February 28, 2009, Pérez visited the Corozal Branch of BPPR, to request anew the termination of the automatic deductions for payment of the two claims with BPPR due to his bankruptcy filing. He was able to make this request and to show copy of the automatic stay order to an officer for BPPR by the name of "Milagros Pérez", who simply told him that he was misinformed, and that BPPR was entitled to make such deductions from his bank account until a notation was made in their computer software as to the bankruptcy filing.

Consistent with this policy, on March 3, 2009, just 3 days after Pérez gave personal notice to BPPR of the bankruptcy filing, the amount of $397.00 was deducted from Perez's checking and/or savings account with BPPR for payment of the prepetition unsecured claims listed in Schedule F.

On March 4th, 2009, yet another deduction in the amount of $132.86 was made by BPPR from Plaintiff's account for payment of these pre-petition claims. Amount that to this date has not been reimbursed despite the adversary proceeding.

Upon becoming aware of the deduction made on March 3, 2009, Perez's spouse made a claim for reimbursement of the amounts deducted from his checking and/or savings account with BPPR before the Corozal Branch. She was told by the same officer, Milagros Pérez, that BPPR would not heed her claim for reimbursement, because BPPR was contractually enabled to make such deductions, and that these would therefore continue.

Thereafter on March 12, 2009, Pérez received a payment book for payment of the loan with the account number ending in 0002, for which proof of claim #2-1 had been filed earlier on March 11, 2009.

The deductions made by BPPR between March 3, and March 4, 2009, in the aggregate amount of $529.86 represent 45% of Perez's monthly net income ($529.86/$1,152.00) and represent 55% of his monthly expenditures ($529.86/$952.00) according to Schedules "I" and "J". For these reason this deductions were the source of undue hardship to Pérez and his spouse, insofar as their ability to meet all monthly expenditures in accordance with their budget, and to provide for all their family needs was severely curtailed, leaving them with no option but to resort to family help to cope with this situation.

### B. BPPR:

The first allegation made by debtor in his complaint is that on February 27, 2009 he spoke with an employee of BPPR for the return of $98.00 debited on February 25, 2009 from debtor's savings account for the payment of his personal loan with Popular Finance account number ****0002. The voluntary petition in debtor's bankruptcy case was filed on February 27, 2009. Therefore, the deduction made on February 25, 2009 was not a violation of the stay as per 11 USCA § 362.

Debtor also alleges that on February 28, 2009 he visited the Corozal Branch of BPPR to request the credit of the $98.00 debited on February 25, 2009 and provided the

bank hostess, Mrs. Milagros Pérez, the notice of stay of the bankruptcy court. BPPR did not receive notification of the bankruptcy filing until March 4, 2010.

As per our records, on February 26, 2009 a call was made to debtor and a message was left through his wife, Mrs. Maria Del C Rosado Santiago, were she was informed that for the payment of Popular Finance's loan a debit was going to be made to debtor's savings account by March 4, 2009.

On February 27, 2009 a collection agent visited debtor's residence, since he was not available; a message was left with his sister in law for debtor to call BPPR. Later that day debtor informed our collection department that he was **in the process of filing bankruptcy**.

At the time this Bankruptcy case was filed, the Notices of filing were received by mail at our general Postal Office Box located in the U.S. Postal Service Main Office in Hato Rey, Puerto Rico. We also received a weekly report called "Boletín de Puerto Rico" that listed all the bankruptcy filings in a given week. As soon as the notice is received either by mail or by the "Boletín" the same is investigated by our personnel to determine if Banco Popular is a creditor in each case. If that is the situation, the clerk assigned to each case enters a bankruptcy alert in all the accounts of that debtor in our computer system, to ensure that no collection letters are sent or calls made to the debtor(s). If the Notices are received by mail, the file room clerk is responsible to tender them to the office clerks in charge of investigating the cases. On the other hand, if the Notices are received by the "Boletín" (via e-mail) those are distributed among the clerks by the supervisor in charge. Banco Popular de Puerto Rico, Consumer Bankruptcy Division received the Boletín de Puerto Rico where plaintiff was listed on March 3, 2009. On March 4, 2009, a bankruptcy alert was noted in plaintiff's accounts database.

The court should note that debtor did not include the correct address and account number as to BPPR's accounts in Schedule F. Therefore, the only way BPPR could receive notification of debtor's bankruptcy filing was through the "Boletín".

Debtor also alleges in his complaint that on March 12, 2009 he received a payment book from BPPR. A payment book was sent automatically by our system on March 3, 2009, given that the previous payment book had already expired and since the bankruptcy alert was entered on March 4, 2009. Usually, if a debtor is not under the bankruptcy protection, a payment book of a loan account is sent annually.

Finally, debtor alleges in the complaint that the deduction of $397.00 made on March 3, 2009 left him with insufficient funds to pay the electricity bill for that month, along with other basic expenditures. On March 5, 2009 debtor called BPPR to ask if any other debits were going to be made to his savings account for the payment of the loan. We informed debtor that we already received the bankruptcy notification and no more debits will be made to his account.

A review of debtor's electricity bills demonstrate that the he is charged bimonthly. A payment of $63.96 was due on February 22, 2009. Debtor paid this amount on February 12, 2009. The next billing cycle was due on April 24, 2009 in the amount of $58.29; debtor paid the full amount on April 15, 2009. Therefore, debtor was always up to date in his payments and even though a debit of $397.00 was made on March 3, 2009, debtor was able to make his electricity bill payments on time by April 15, 2009.

It was not until May 27, 2009 that attorney for debtor called the bankruptcy department of BPPR to request the credit of the $397.00 erroneously deducted from debtor's savings account. On this same date we sent a letter to the Loan Accounting department of BPPR to expedite the process of the return of the monies deducted. The next day BPPR credited $397.00 to debtor's savings account no. ********8678.

BPPR's actions were not egregious, intentional, in bad faith or malicious towards the

debtor. The debit was made before receiving adequate notice of the bankruptcy filing and the payment book was sent automatically before the bankruptcy alert was entered in our system. As per docket no. 8 and admitted by the debtor in his complaint, the Clerk served a copy of the Notice of Bankruptcy filing on March 4, 2009. On this same date, a bankruptcy notation was made in our system. Therefore, BPPR's actions were not willful as to the imposition of actual damages and punitive damages. As soon as BPPR received adequate notification of debtor's bankruptcy filing, BPPR took the necessary steps to prevent that any further collection letters are sent and that any calls are made to the debtor. Furthermore, debtor has failed to present any evidence to support the damages requested in his complaint.

### III. STATEMENT OF UNCONTESTED FACTS

1. This is a *core* proceeding under 11 U.S.C. §362 and FRBP 7001.

2. The Court has jurisdiction under 28 United State Code U.S.C. §157(a)(b)(1) and §1334 since it arises in a case under the Bankruptcy Code and concerns property of the Debtor.

3. *Venue* is proper in this District Court under 28 U.S.C. §1408 & §1409, in as such as all the events or omissions giving rise to the claims of the above-captioned case occurred within the territory of this jurisdictional district.

4. Section 362 of the Bankruptcy Code, 11 U.S.C. §362 applies to this bankruptcy case.

5. On February 27, 2009, Debtor/Plaintiff filed a Chapter 13 Bankruptcy Petition before the United States Bankruptcy Court for the district of Puerto Rico.

6. In schedule "F" filed by debtor/plaintiff along with the bankruptcy petition captioned as case number 09-01452 SEK, BPPR appears listed as the holder of an

unsecured claim against the estate in the amount of $1,353.39 related with the account number ending with the digits 8223.

7.  Debtor/Plaintiff also listed in Schedule F a Popular Finance loan in the amount of $4,335.35.

8.  Milagros Perez worked at the BPPR Corozal Branch during the year 2009.

9.  On March 3rd, 2009 BPPR received the weekly report called "Boletín de Puerto Rico".

10.  On March 4, 2009 the Clerk of the Court served a copy to BPPR of the Notice of the Chapter 13 case filed by Artemio Pérez Negrón.

11.  Plaintiff has a savings account with the number xxxxx8678 in Banco Popular of Puerto Rico.

12.  On March 3, 2009, the amount of $397.00 was deducted from debtor's checking account for the payment of Popular Finance's loan.

13.  The amount of $397.00 deducted on March 3rd, 2009, from Plaintiff's checking account #xxxxx8678 was made after Plaintiff had filed the Chapter 13 Petition captioned as 09-01452 SEK.

14.  The amount of $397.00 deducted on March 3rd, 2009, from plaintiff's savings account #xxxxx8678 was applied for payment of a pre-petition unsecured claim held by BPPR against the estate.

15.  On March 11, 2009, BPPR filed a proof of claim in the unsecured amount of $1,236.81 under account ending in number 0102 that is docketed as claim #1-1.

16.  On March 11, 2009, BPPR also filed a second proof of claim in the unsecured amount of $3,940.10 under account ending in number 0002 that is docketed as claim #2-1.

17.  The account statement of debtor's savings account with BPPR for the month of May 2009 reflects a credit for $397.00 made on May 28, 2009.

18. A partial judgment was entered by this Honorable Court on June 16, 2010 finding that BPPR violated the automatic stay.

## IV. STATEMENT IN ISSUES

### A. Debtors:

1. Whether BPPR's failure to acquiesce to Perez's demands, by refusing to promptly refund Pérez the amounts deducted from his bank account in violation of the automatic stay, opting instead to await nearly 2 months after it admittedly had received notice of the bankruptcy filing to partially redress the violation, without refunding the full amount of such deductions to this late date, renders the violation of the automatic stay willful.

2. Whether BPPR is accountable for damages caused to plaintiff by its refusal to redress the acts undertaken in violation of the automatic stay immediately upon learning of the bankruptcy filing, and is also liable for punitive damages.

### B. BPPR

1. Whether BPPR received adequate notice of debtor's bankruptcy filing?

2. Whether BPPR's actions in violation of the automatic stay were willful as to the imposition of actual damages?

3. Whether BPPR's actions in violation of the automatic stay were willful as to the imposition of punitive damages?

4. Whether debtor suffered any damages as a consequence of BPPR's actions in violation of the automatic stay?

## V. LIST OF EXHIBITS

### A. Debtors:

**A.** The account statement of Pérez checking and/or savings account with BPPR for the month of March, 2009, reflecting a debit of $397.00 made on March 3, 2009 by BPPR for payment of a pre-petition unsecured claim by this creditor.

**B.** The account statement of Pérez checking and/or savings account with BPPR for the month of March, 2009, reflecting a debit of $132.86 made on March 4th, 2009 by BPPR for payment of a pre-petition unsecured claim by this creditor.

**C.** Payment book for the Popular Finance loan received by Pérez on March 12, 2009.

**D.** The account statement of Pérez checking and savings account with BPPR for the month of May, 2009, reflecting a credit for $397.00 made on May, 2009.

**E.** BPPR statement showing an employee of BPPR showed at debtors residence on February 27th, 2009, to collect from debtor and was informed of the bankruptcy proceeding.

**F.** Letter dated May 27th, 2010, directed to Wanda Cruz in which a request to revert and credit debtor's account with $397.00 dollars.

**G.** Presentation card of Milagros Perez given to debtor on February 28th, 2009.

**H.** Notice of debit in the amount of 397.00 made on March 3rd, 2009 from debtors bank account with BPPR for payment of loan in arrears.

**I.** Letter with Certified copy of complete Documents in BPPR possession dated August 12, 2010 pursuant subpoena served August 11th, 2010.

**B. BPPR**

1. Statements for savings account number XXXXX8678 from February 2009 through December 2009.

2. Reports for personal loan number ******0002 from February 2009 through August 2010.

3. Charge off report for personal loan number *****0002 from February 29, 2009 through March 11, 2009.

4. Accumulated transaction list report for personal loan number ******0002 as of March 4, 2009.

5. Certified letter dated May 27, 2009 from BPPR's Bankruptcy Department Supervisor to Consumer Service Payment and Adjustment Department.   RE: Return of debited amount to account number ****8678.

6. Savings Account report for account number XXXX8678 with a credit advance of $397.00 made on May 28, 2009.

7. Electricity utility bills of debtor Artemio Pérez Negrón for the months of January 2009 through December 2009.

## VI.  LIST OF WITNESSES

**A.  Debtor:**

    a.  Artemio Pérez Negrón

    b.  Artemio's Wife

    c.  Lisandra Rodríguez

    d.  Milagros Pérez

**B. BPPR:**

    a.  Mirna Santiago Román - Bankruptcy Consumer Service Supervisor of Banco Popular de Puerto Rico

• Her testimony would relate mainly to the measures adopted and enforced by the Consumer Bankruptcy Unit to prevent violations of the lift of stay, and internal procedures followed to provide maintenance to consumer accounts of debtors in Bankruptcy.

    b. Milagros Pérez Lopez - Bank Hostess Sales & Services Corozal Branch Banco Popular de Puerto Rico

• Her testimony would relate mainly to the events that allegedly took place on February 28, 2009 and thereafter, as drafted in the complaint filed by plaintiff that led to the filing of the adversary proceeding.

    c. Other individuals not yet identified may be called. If so, reasonable disclosure prior to trial would be granted.

## VII.   OBJECTIONS TO EVIDENCE:

**Plaintiff:**

Perez objects the admissibility of Settlement letter by co-defendant BPPR.

As to the documents submitted by certified copy by BPPR, Plaintiff has requested a coordinated inspection of said documents and are still awaiting BPPR response. Debtor/Plaintiff questions the veracity of the documents since is clear that the documents are not complete.

Objected under Rule 26 FRCP Electricity utility bills of debtor Artemio Pérez Negrón for the months of January 2009 through December 2009, evidence not pertinent to adversary proceeding.

**Defendant:**

Objected under Rule 26 FRCP plaintiff's Exhibit B - The account statement of Pérez checking and/or savings account with BPPR for the month of March, 2009, reflecting a debit of $132.86 made on March 4th, 2009 by BPPR for payment of a pre-petition unsecured claim by this creditor. The evidence is not pertinent to the adversary proceeding. This debit was not alleged by the plaintiff in the complaint.

**Joint:**

Pending before the Court is BPPR's Motion to Quash or Limit Subpoena served by Pérez, and Pérez reply thereto.

## VIII. LIMITATIONS AND RESERVATIONS:

There is reserved for each of the parties the right to further supplement and/or modify the list of exhibits and witnesses upon application to the court, and for good cause shown.

## IX. LEGAL MEMORANDUM

**A. Debtor**

The automatic stay is among the most basic of debtor protections under bankruptcy law. ***Soares v. Brockton Credit Union***(In re Soares), 107 F 3rd 969, 975 (1st Cir. 1997). It is axiomatic that 11 USC §362(a) enjoins collection actions against debtor and the estate.

Violations to the automatic stay are governed by 11 USC §362(k), which provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages".

The automatic stay in this case was triggered by the filing of the bankruptcy petition on February 27, 2009. The Clerk gave notice of the filing to BPPR on March 4, 2009.

It is an already established fact in this case that BPPR engaged in acts that were in violation of the automatic stay. It remains to be established however, whether these acts by BPPR were intentional or deliberate, and therefore "willful" within the scope of 11 USC §362(k).

Specific intent to violate the stay is not a requirement for an action to be willful within the context of §362(k). "The standard for a willful violation of the automatic stay under §362(h)[1] is met if there was knowledge of the stay and the defendants intended the actions which constituted the violation." ***Fleet Mortgage Group, Inc., v. Kaneb*** (In re Kaneb) 196 F 3rd 265.369 (1st Cir. 1999). The Courts must presume that the violation was deliberate if the creditor received "actual notice" of the bankruptcy filing. "Once the creditor receives actual notice the burden shifts to the creditor to prevent violations of the automatic stay". Kaneb, supra.

It has been held that notice of the bankruptcy need not be formal, and that Courts must ultimately determine whether the creditor had actual knowledge of the bankruptcy filing. ***Matter of Behm***, 44 B.R. 811,812(Bkrtcy. W.D. Wis. 1984). Oral notice by the debtor has been found sufficient to apprise a creditor of the bankruptcy filing even when the creditor has not yet received official notice of the bankruptcy filing by the Clerk's Office. ***Mercer v. D.E.F., Inc.*** 48 B.R. 562 (Bankruptcy. D. Minn. 1985). Oral notice of a bankruptcy filing is sufficient to place a creditor on notice of pending bankruptcy and thus of the provision of the automatic stay. **Sucka v. US** 77 Bankr. 777, 781 (Bankr. C.D. Cal. 1987).

Pérez gave actual notice of the bankruptcy filing BPPR as early as February 27, 2009, when he spoke in person with an employee of BPPR, Lisandra Rodríguez, and informed her that he had filed a bankruptcy petition. At the time he demanded that no further deductions be made by BPPR from his bank account for payment of the pre-petition claims held by this creditor.

On February 28, 2009, Pérez again spoke in person with another employee of BPPR, Milagros Pérez, at the Corozal Branch, to request anew that no further

---

[1] Section 362(k) under BAPCPA currently stands for Section §362(h) under the 1978 Bankruptcy Code.

deductions be made from his checking and/or savings account with BPPR for payment of the two claims held by this creditor in view of the bankruptcy filing.

Once a creditor has been notified of the bankruptcy filing, the creditor has a duty to restore the status quo; that is, the creditor should undo its post-petition collection activities without the debtor having to seek affirmative relief from the bankruptcy court. In re ***Stephen W. Gross***, P.C. 68 B.R. 847 (Bkrtcy. E.D. Pa 1987); accord, e.g., ***In re Miller***, 22 B.R. 479 (D.C. Md. 1982).

Even if, for the sake of argument, we were to accept (which we do not) BPPR's disclaimer that the post petition deductions made from Pérez bank account were not intentional or deliberate, BPPR simply cannot excuse its refusal to undo its actions by refunding the offset within a reasonable time after Pérez made the request. A partial refund of the offset was made nearly two months after BPPR had admittedly received notice of the bankruptcy filing. Actually at this time no refund of the $132.86 has been made, establishing without a doubt that there is willfulness in their act.

In this regard it has been held that an incident which may not be willful at its inception becomes willful if the offending creditor fails to take steps to rectify the situation in a timely manner. ***In re Ketelsen***, 78 B.R. 573 (Bankr. D.S.D. 1987).

BPPR's refusal to refund the post-petition debits from Perez's bank account immediately upon receiving actual notice from debtor of the bankruptcy filing, awaiting instead nearly two months after having admittedly received such notice to make a partial refund of the offset, coupled by the fact that the post-petition deductions have not been fully refunded to Pérez at this late date, all serves to establish a willful violation of the automatic stay in this case. Also, further establishes without a doubt how BPPR has acted with temerity and recklessness displaying such malicious and egregious conduct that this Honorable Court will be obliged to find BPPR acted in bad faith.

## B. BPPR

The Bankruptcy Code on section 362(k) establishes that an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages. If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

Willful violation of the automatic stay occurs when creditor has **adequate notice of bankruptcy and intentionally commits** act that violates stay. _In re Sculky_, 182 B.R. 706, (Bkrtcy.E.D.Pa.1995).

In the case at hand, notice by mailing was not received since the address included in Schedule F of debtor's bankruptcy petition is incorrect. Furthermore, debtor did not include the account number as to the Popular Finance loan and the other BPPR loan has an incorrect and incomplete account number.

The case of _In Re Díaz Rodriguez_, 357 B.R 691, (Bkrtcy.D.Puerto Rico 2006), concluded that a Chapter 7 debtor, who admittedly ignored the correct mailing address for creditor in his bankruptcy schedules, failed to show that creditor had notice or actual knowledge of the case, as required to establish a "willful" stay violation; debtor should have and could have determined the proper address, as he did to serve the summons in his adversary proceeding against creditor for its alleged stay violation, and so creditor did not violate the stay when it and/or an individual acting on its behalf attempted to collect debt.

BPPR sustains that even though a payment book was sent to debtor after the filing of the bankruptcy petition, the same was not a willful violation of the stay since the payment book was sent before receiving notification of the bankruptcy filing.

In the case of _In Re Rijos_, 260 B.R. 330, (Bkrtcy.D.Puerto Rico 2001) the court

concluded that even stay violation that occurred when credit card issuer, with notice of debtors' Chapter 13 filing, mailed out billing statement to their home address **did not rise to level of "willful" violation of stay, where statement was mailed out automatically by computer program before issuer had sufficient time to convert its computer programs, at time when issuer was in process of converting programs, and billing statement in question was last statement that debtors received from that credit card issuer.** *In Re Newell*, 117 B.R. 323, (Bkrtcy.S.D.Ohio 1990) also concludes that inadvertent sending of computer-generated billing to Chapter 13 debtors, though constituting violation of automatic stay, was not willful violation such as would warrant award of punitive damages.

Usually, the payment books are sent annually until the loan is paid in full. In this case the payment book was sent automatically by our system, since the previous payment book had already expired and the bankruptcy alert was not entered until the next day.

The debit to debtor's savings account for the payment of the personal loan in the amount of $397.00 was not a willful violation of the stay since it was done before receiving notification of debtor's bankruptcy. As soon as debtor's attorney contacted the bankruptcy department to request the return of the $397.00, BPPR promptly credited debtor's savings account.

The case of *In re Learn*, 95 B.R. 495, (Bkrtcy.N.D.Ohio 1989) concluded that the bank would not be held in contempt for failing to move for relief from stay prior to exercising right of setoff against debtor's general account, where setoff was exercised before bank was notified of debtor's bankruptcy filing and bank promptly credited account.

In the complaint debtor requests actual damages in the amount of $55,000 for the disruption of debtor's rehabilitation efforts. Debtor has not demonstrated any evidence

of actual damages. Debtor only alleges that BPPR's actions caused him problems with his economical stability sought by him for his family and also created family problems. In the case of *In Re Alberto*, 119 B.R. 985 (Bkrtcy.N.D.Ill.1990), debtor was not entitled to any damages, costs or attorney fees for creditor's willful violation of stay in attempting to enforce its judgment against debtor, where **debtor failed to furnish any evidence of liquidated or demonstrable actual damages or of costs or attorney fees**. Also, the case of *In Re Heghmann*, 316 B.R. 395 (1st Cir.BAP (N.H.) 2004) decided that actual damages should be awarded for creditor's willful violation of automatic stay **only if there is concrete evidence supporting award of definite amount**.

Debtor also requests no less than $45,000 in punitive damages for BPPR's intentional and deliberate actions in reckless disregard of the Automatic Stay Order issued by this Honorable Court. No punitive damages should be awarded in absence of actual damages for willful violation of automatic stay. *In re McHenry*, 179 B.R. 165 (9th Cir.BAP (Wash.) 1995).

The case of *In re Crispell*, 73 B.R. 375 (Bkrtcy.E.D.Mo.1987) concludes that although bank's automatic debits of debtor's checking account constituted setoffs in violation of automatic stay, violation was not willful, for purpose of imposing attorney fees and punitive damages as sanctions, where first debit was made prior to bank's notice of debtors' bankruptcy, and other two debits were made by reason of banker's oversight in not terminating "automatic" debit feature of debtors' account. Also, the case of *In Re Dayley*, 349 B.R. 825, Bkrtcy.D.Idaho 2006), decided that no grounds for punitive damages existed for creditor's willful violation of the automatic stay in mailing Chapter 13 debtors three computer-generated billing statements; creditor maintained a system that, when it functioned correctly, adequately responded to bankruptcy filings, it was human error, not a system failure, that accounted for the offensive statements being sent to debtors, the matter was promptly addressed when creditor was finally notified of its error,

and so there was no basis to conclude that creditor was guilty of "reckless or callous disregard" for the automatic stay or debtors' rights.

As to the emotional distress, anguish and marital strife suffered by the debtor for the alleged indifference displayed by the officers of BPPR, the case of _In Re Gorringe_, 348 B.R. 789 (Bkrtcy.D.Idaho 2006) concluded that while debtor may have been upset to learn that creditor, subsequent to commencement of his Chapter 7 case, had garnished one of debtor's accounts in attempt to collect pre-petition debt and had sent two dunning letters to debtor, debtor failed to establish that his anxiety rose to level of "significant emotional distress," of kind required to support award of emotional distress damages, where no such distress was readily apparent from facts proven.

Furthermore, the case of _In Re Parker_, 279 B.R. 596, (Bkrtcy.S.D.Ala.2002) concluded that Chapter 13 debtors were not entitled to recover damages for any general stress, sleeplessness or marital discord allegedly resulting from the Internal Revenue Service's (IRS's) "willful" violations of automatic stay, where debtor-wife presented no medical evidence to support her emotional distress claims, and where debtor-husband, while producing medical evidence of blood pressure problems, indicated that medicine, for which he was being compensated, brought problems under control.

Finally, the case of _In Re Dayley_, 349 B.R. 825, Bkrtcy.D.Idaho 2006 concluded that Chapter 13 debtors were not entitled to damages for emotional distress as a result of creditor's willful violation of the automatic stay in mailing them three computer-generated billing statements; although debtor-husband testified that receiving the statements so upset debtor-wife, who was diabetic, that it caused her blood sugar to drop and her complexion and voice to change, thereby upsetting him to the brink of breaking his sobriety, the testimony did not establish that either debtor experienced significant emotional distress beyond becoming temporarily upset, neither debtor apparently required any medical attention, the court questioned why, if the impact on debtors' health

had been truly significant, they and their attorney did not bring the fact to creditor's attention for three months, and once the problem was brought to creditor's attention, creditor corrected the computer glitch and no further statements were sent.

In conclusion, BPPR did not commit a willful violation of the stay, since the debit of $397.00 and the payment book were sent before receiving adequate notice of the bankruptcy filing. Debtor's allegations as to the damages suffered by him and his family are not sufficient for the imposition of actual and punitive damages against BPPR. BPPR sustains that its actions were not malicious, egregious and in bad faith towards the debtor.

## X.    TIME FOR TRIAL

Joint:   One day

## XI. DEPOSITIONS OR DISCOVERY PENDING

### A.  Plaintiff

Plaintiff's requested permission to amend the complaint in order to bring co-defendant Jefferson Capital Systems LLC. for being joint and severally liable. Discovery upon co-defendant Jefferson Capital Systems LLC.

Leave to Amend the complaint in order to include new information (allegations) just furnished by BPPR on August 20th, 2010.

Pending before the Court is BPPR's Motion to Quash or Limit Subpoena served by Pérez reply thereto.

Certified copy still pending of debtors accounts with BPPR.

### B.  Defendant

BPPR will object the Motion for Leave to file Amended Complaint to include Jefferson Capital Systems LLC.

## XII. PENDING MOTIONS

## A. Plaintiff

1. BPPR's Motion to Quash and/or Limit Subpoena and Pérez Reply thereto.

2. Pérez Motion requesting permission from the Court to amend the pleadings to include Jefferson Capital Systems LLC as co-defendant, and request the corresponding issuance of new summons.

3. Motion objecting Plaintiff's Proof Of Claims 2-1 (claims registry) based on information furnished by BPPR on August 20th, 2010. 18 USC &152 and & 3571 fraudulent claim.

4. Plaintiff reserves the right to file an objection to claim 1-1 once the information requested in the subpoena in regards to claim 1-1 (account ending in 0102) is furnished.

5. Upon new information just furnished by BPPR on August 20th, 2010, Plaintiff will request that a leave to amend the complaint be granted.

**B. Defendant -** BPPR will file an opposition to debtor's Motion for Leave to file Amended Complaint and will reply to debtor's objection to proof of claim.

In San Juan, Puerto Rico, this 24th day of August, 2010.

| /s/ MARILYN VALDES ORTEGA | /s/VERONICA DURAN-CASTILLO |
|---|---|
| USDC-PR 214711 | USDC- PR 224413 |
| MARILYN VALDES ORTEGA, ESQ. | Attorney for Banco Popular de Puerto Rico Consumer Bankruptcy |
| Attorney for Debtor | Department |
| PO Box 195596 | PO Box 366818 |
| San Juan, PR 00919-5596 | San Juan, Puerto Rico 00936-6818 |
| Tel. 787-758-4400 | Tel. (787) 753-7849 |
| E-mail: valeslaw@prtc.net | Fax. (787) 751-7827 |
| | vduran@bppr.com |